# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

JENNIFER L. CARROLL,

      Plaintiff,                         Civil Action 2:17-cv-387
                                           Judge James L. Graham
      v.                                     Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Jennifer L. Carroll ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Amended Statement of Errors (ECF No. 16), the Commissioner's Memorandum in Opposition (ECF No. 19), Plaintiff's Reply (ECF No. 22), and the administrative record (ECF No. 11.) For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Amended Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## I.  BACKGROUND

Plaintiff filed her application for supplemental security income on June 28, 2007, alleging that she had been disabled since June 7, 2007. Administrative Law Judge David B. Daugherty ("ALJ Daugherty") found Plaintiff to be disabled and awarded benefits in July 2008. ALJ Daugherty relied heavily on evidence provided by Frederic Huffnagle, M.D., however,

and, in 2015, the Appeals Council advised Plaintiff that the Office of the Inspector General had discovered fraud in evidence provided by Dr. Huffnagle. The Appeals Council considered Plaintiff's application and the original administrative record without the evidence from Dr. Huffnagle and determined that insufficient evidence remained to support the ALJ Daugherty's decision. Accordingly, the Appeals Council remanded Plaintiff's application for a new hearing and afforded her an opportunity to submit additional evidence prior to that hearing.

On May 10, 2016, a hearing was held before Administrative Law Judge John M. Dowling ("the ALJ"). Plaintiff, who was not represented by counsel but was assisted by a non-attorney representative, appeared and testified at the hearing. Plaintiff testified as follows about her reasons for not working on a sustained basis during the relevant time period:

> I got wore quick to where – I mean, first of all, my back would hurt me so bad to where I physically couldn't go on. I would have to sit down and take breaks, and they're not going to allow you to do that. And, you know, stop to – and another thing is stopping because, you know, you can't be around people . . . .
>
> \* \* \*
>
> But physically, I got to where I couldn't even do that. I got to where I couldn't even like stand on my feet to run the vacuum cleaner for a long time. I couldn't stand to cook. I just couldn't do any of that, any more physically, because of my back. And my legs, I mean, I would be standing, and my legs would give out from under me, or physically the pain – I just couldn't do it.

(ECF No. 11-2 at PAGEID ##116-117.) She further testified that she could not lift "anything" and that her mother assisted her with her children because she could not lift them. (*Id.* at PAGEID #118.) Plaintiff also testified about psychological symptoms. She stated that she had been in a mental illness treatment program in 2007 because she "had lost touch with reality" and her "mind reverted back to a child." (*Id.* at PAGEID #121.)

Vocational Expert Donald Duffin (the "VE") also testified at the administrative hearing.

2

The ALJ first observed that Plaintiff had no past relevant work. (*Id.* at PAGEID #135.) The VE then testified that a hypothetical individual of Plaintiff's age, education, and vocational profile who retained the residual functional capacity ("RFC")[1] that the ALJ ultimately assessed could perform jobs that exist in significant numbers in the national economy. Although the RFC specified the medium level of exertion, the VE testified that significant numbers exist at both the light and the medium level of exertion and offered representative jobs at each level. (*Id.* at PAGEID ##137-138.) The ALJ also engaged in the following colloquy with the VE:

> Q: If somebody is dealing with a combination of symptoms that are causing symptoms such as pain or other symptoms that are – that on occasion get so bad that the individual can't even get to work – how many of those absences – how many absences, period, are going to be permitted by employees in the unskilled work environment during this time period?
>
> A: Well, there was a recent study presented at a conference I attended last year covering back for a number of years, and my own experience indicates that over 90 percent of employers will tolerate no more than about one day's absence per month on a routine basis.
>
> Q: Okay. What if they get to work – they don't want to lose their job. At the same time, they're still having these symptoms, so it's taking them off-task for periods of the day. How much off-task behavior would be tolerated by those same employers?
>
> A: In my experience and some research indicates about 5 percent of the time or about three minutes an hour is all an employer will tolerate. And even then, it must be spread more or less equally throughout the day.
>
> Q: Okay. So very short breaks. And that's not counting your standard breaks you get, you know, the 15-minute breaks you get every couple of hours and your lunch break?
>
> A: That's correct.

(*Id.* at PAGEID #138-139.)

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

3

In her follow-up questions, Plaintiff's non-attorney representative engaged in the following colloquy with the VE and the ALJ:

> Q: In either of the hypotheticals, if you would include the need to lay down or be off-task for like an hour or two hours a day, would that preclude those jobs?
>
> A: If they were in addition to normal breaks, yes, that would eliminate all –
>
> ALJ: Well, he already said off-task 5 percent is the most –
>
> REP: Yes.
>
> ALJ: -- right, three minutes an hour?
>
> VE: Yes, sir.
>
> ALJ: So –
>
> REP: Okay. I have no further questions.

(*Id.* at PAGEID #140.)

On July 7, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PAGEID ##85-96.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
> 2. Does the claimant suffer from one or more severe impairments?
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
> 5. Considering the claimant's age, education, past work experience, and

during the relevant time period. (*Id.* at PAGEID #88.) At step two, the ALJ found that, during the relevant time period, Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, mood disorder, and anxiety disorder. (*Id.*) The ALJ found that Plaintiff's hypertension and insomnia were non-severe impairments or not medically determinable. (*Id.* at PAGEID #89.)

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments as described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at PAGEID #89.) Specifically with respect to Plaintiff's mental impairments, the ALJ concluded as follows:

> The severity of the beneficiary's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria were satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace;
>
> \*     \*     \*
>
> In activities of daily living, the beneficiary had mild restriction. The beneficiary reported difficulty with her activities of daily living, but attributed these mostly to her physical rather than mental symptoms. Furthermore, the beneficiary's stressors during the relevant time period appeared situational in that they revolved around her financial stressors. (Ex. 10F/3, 6). Given such evidence, the undersigned finds that the beneficiary was only mildly limited in this functional area during the relevant period.
>
> In social functioning, the beneficiary had moderate difficulties. The beneficiary testified that she had difficulty being around others. Although she reported crying spells during the relevant period, she subsequently reported doing

---

residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

well and no or reduced mood swings. (Ex. 10F/4-5). Examination revealed a stable mood. (Ex. 3F/3). Given the evidence as a whole, the undersigned finds that the beneficiary had moderate limitations in this functional area.

With regard to concentration, persistence, or pace, the beneficiary had moderate difficulties. The beneficiary reported significant difficulties with concentration, persistence, or pace. Yet despite this, she reported that she had "pretty good" grades and had completed 9th grade. (Ex. 14F/20-27). The beneficiary reported having driven to Ohio to get pills, indicating sufficient concentration to travel. (*Id.*). This relates to the relevant period given that the beneficiary reported a long history of drug use, which would have extended back to the relevant period. Rather than her children having been removed from her care for deficits in concentration, persistence, or pace during the relevant period, they were removed due to the beneficiary's drug use. (Ex. 14F/43). During the relevant period, the beneficiary had improved mental status. (ex. 10F/3). Given the evidence as a whole, the undersigned finds that she was moderately limited in this functional area.

\*   \*   \*

Because the beneficiary's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria were not satisfied.

(*Id.* at PAGEID ##89-90.)

The ALJ then set out his finding with respect to Plaintiff's RFC:

After careful consideration of the entire record, the undersigned finds that the beneficiary had the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except she could perform simple, routine tasks and occasionally interact with the public and coworkers.

(*Id.* at PAGEID #90.)

In arriving at that RFC, the ALJ considered all symptoms expressed by Plaintiff in light of the objective medical evidence and other evidence in the record, including opinion evidence. He first observed that Plaintiff had stated that the pain in her back and legs was sharp and constant; that it was brought on by walking or sitting for long periods and that medication relieved it somewhat; that she needed assistance in activities like laundry, cutting grass, and

6

mopping; that the pain in her legs and back prevented her from concentrating on anything; that she could not lift anything; that she was nervous and aggravated and did not like to be around people; that she suffered from depression and anxiety; that her medications upset her stomach; and that she never slept well. (*Id.* at PAGEID #91.) The ALJ concluded, however, that Plaintiff's statements about her symptoms were "not entirely consistent" with the medical and other evidence in the record. (*Id.*)

As an example of the inconsistencies, the ALJ observed that Plaintiff had testified that her mother had taken her children when Plaintiff lost touch with reality and reverted to childhood. He noted, however, that records from February 2009 suggested that Plaintiff's children were removed due to Plaintiff's drug use. The ALJ concluded that this inconsistency suggested that Plaintiff's statements are "not a reliable basis for decisionmaking." (*Id.* at PAGEID #92.) With regard to Plaintiff's degenerative disc disease, the ALJ concluded that the record evidence suggested that Plaintiff experienced tenderness and a limited range of motion and positive straight leg raise. (*Id.*) He was persuaded that Plaintiff's symptoms were sufficient to limit her to medium work. (*Id.*) He also concluded, however, that further restrictions were not warranted because (a) sensation was intact, in spite of Plaintiff's complaints of numbness; (b) Plaintiff had reported to her medical providers that medication helped with her symptoms and that she was doing fairly well; (c) an MRI of her lumbar spine taken in May 2007 showed symptoms that were less intense, persistent, and limiting than Plaintiff reported and, in fact, showed only mild spondylosis and no disc herniation or other acute finding; and (d) Plaintiff's gait was not antalgic and Plaintiff had 5/5 strength in both of her legs. (*Id.*) In light of that evidence, the ALJ found that Plaintiff was not more limited that the RFC accounted for. (*Id.*)

The ALJ also considered the evidence related to Plaintiff's mental impairments. He found that the record revealed that Plaintiff had suffered mood swings and crying spells, and that she had alleged difficulties with concentration and anxiety, during the relevant period. (*Id.*) The ALJ concluded that, combined, these symptoms would limit Plaintiff to simple, routine tasks and occasional interaction with the public and coworkers. (*Id.*) The ALJ was not persuaded that further restrictions were supported, however. He found that Plaintiff's symptoms were "substantially related to situational stressors during the relevant period, such as problems setting limits with her daughter, lack of child support payments, and other financial difficulties." (*Id.*) He also noted that Plaintiff had reported doing fairly well on medication and experiencing a more stable mood. He concluded that Plaintiff's symptoms that were not as intense, persistent, and limiting as Plaintiff had alleged. (*Id.*) In the context of his analysis of Plaintiff's statements about her mental symptoms and the relevant evidence, the ALJ made note of Plaintiff's ability to obtain a new place to live and have utilities activated, showing "more mental capability than the extremely limited ability the beneficiary attempted to portray at the hearing." (*Id.*)

With respect to the opinion evidence, the ALJ assigned little weight to the opinions of state agency medical and psychological consultants who had concluded that the record included insufficient evidence to make a determination about Plaintiff's claims during the relevant period. (*See id.* at PAGEID #93.) The ALJ also assigned little weight to the opinions of a psychological consultative examiner from 2003, well before the alleged onset date. (*Id.*) He assigned little weight to the opinion of Dr. Sheila Kensinger, who treated Plaintiff in 2012 and 2013, explaining that her opinions did not address the relevant period. (*Id.*)

Relying on the VE's testimony, the ALJ concluded that Plaintiff was capable of

8

performing work that existed in significant numbers in the national economy. (*Id.* at PAGEID #94.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at PAGEID #95.)

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as *adequate to support a conclusion*.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)) (emphasis added).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)), *cert. denied sub. nom. Paper, Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.* 537 U.S. 1106 (2003). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial

9

evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III. ANALYSIS

In her Statement of Errors, Plaintiff maintains that both the ALJ's physical and mental RFC findings fail to adequately accommodate her impairments. With respect to the ALJ's consideration of her physical RFC, Plaintiff maintains that the ALJ erroneously failed to credit her complaints of "constant and disabling pain in her back, legs, and feet" and improperly concluded that her activities of daily living supported his RFC finding that she could perform medium work. (Pl.'s Statement of Errors, ECF No. 16 at PAGEID #1156.) With respect to the ALJ's evaluation of her mental RFC, Plaintiff submits that the ALJ erred in discounting her allegations of severe impairment based upon her "ability to obtain a new place to live and to get utilities activated as *prima facie* evidence of 'mental capacity . . . .'" (*Id.* at PAGEID #1157.) Finally, Plaintiff contends that the ALJ erroneously failed to account for the VE's testimony that "'over 90 percent of the employers will tolerate no more than one day's absence per month on a routine basis' and that about '5 percent of the time, or about three minutes an hour is all an employer would tolerate' for a worker to go 'of-task' or on a break." (*Id.* at PAGEID #1158 (quoting PAGEID #139).) The undersigned considers Plaintiff's challenge to the ALJ's credibility assessment before turning to her challenges to his reliance upon the VE's testimony.[3]

---

[3] In her Reply to the Commissioner's Memorandum in Opposition, Plaintiff raises several additional arguments, including that the ALJ erred by substituting his own medical opinion for that of an examining physician, by disregarding Social Security Commission rules, and by failing to recognize that Plaintiff's frequent medical appointments during the relevant time period would

10

### A. The ALJ's Credibility Assessment

The undersigned finds Plaintiff's challenges to the ALJ's credibility assessment to be without merit.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain."

---

have precluded her attending work. This Court must disregard these arguments because Plaintiff first raised them in her Reply. *See, e.g., Martinez v. Comm'r of Soc. Sec.*, No. 09-13700, 2011 WL 1233479, at *2 n.1 (E.D. Mich. Mar. 30, 2011) ("[N]ew arguments that [the claimant] raised for the first time in the reply brief were correctly disregarded by the magistrate judge." (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (finding "issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses"))); *see also Anton v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 634 F.3d 364, 368 n.2 (6th Cir. 2011) (declining to consider arguments raised for the first time in a reply brief).

*Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir.1987)).

Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific,' *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted).

Here, as discussed above, the ALJ discussed Plaintiff's complaints of disabling symptoms and functional limitations, but found her to not be fully credible. More specifically, the ALJ credited her allegations of pain insofar as he limited her to medium work and her

12

allegations of psychiatric limitations insofar as he limited her to "simple, routine tasks and occasional interact[ion] with the public and coworkers." (ECF No. 11-2 at PAGEID #90.) In discounting her extreme allegations of disabling pain, numbness, headaches, and mental illness, the ALJ relied upon inconsistencies in Plaintiff's testimony; inconsistencies between Plaintiff's allegations and the medical evidence, including treating sources' observations and objective testing results; the impact of Plaintiff's medications; Plaintiff's activities of daily living; the opinion evidence; and the impact of situational stressors during the relevant period.

The undersigned concludes that the ALJ reasonably assessed Plaintiff's credibility. For example, the ALJ reasonably discounted Plaintiff's allegations based upon inconsistencies between her alleged symptoms and the objective testing results. (*See*, *e.g.*, ECF No. 11-2 at PAGEID #92 (citing ECF No. 11-7 at PAGEID #471) (pointing out that despite Plaintiff's allegations of numbness, her medical provider indicated that her sensation was intact); ECF No. 11-2 at PAGEID #92 (citing ECF No. 11-7 at PAGEID #411) (MRI, taken on May 3, 2007, just over one month prior to the alleged onset date, showing only unremarkable or mild findings and (citing ECF No. 11-7 at PAGEID #428) (examination finding revealed non-antalgic gait and full, 5/5 strength in both lower extremities).) The ALJ also reasonably considered that Plaintiff reported that her medications helped with her symptoms, (Feb. 2008 Country Wide Health Progress Note, ECF No. 11-7 at PAGEID #471), and that she was doing "fairly well," (Sept. 20, 2007 Dr. Chandel Progress Note, ECF No. 11-7 at PAGEID #463). *See* SSR 96–7p, 1996 WL 374186 (July 2, 1996) (in assessing credibility, the adjudicator must consider, among other factors, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received"); 20 C.F.R. § 404.1529(c)(3) (same). In addition, the ALJ

13

reasonably observed that inconsistencies in Plaintiff's testimony relating to the reason for her children's removal, "suggests that her allegations are not a reliable basis for decisionmaking," (ECF No. 11-2 at PAGEID # 92). *See Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the . . . claimant's testimony[] and other evidence.").

Plaintiff's argument that the ALJ erroneously relied upon her activities of daily living or her ability to obtain a new place to live and get utilities in assessing her credibility fails to persuade. Plaintiff objects to the ALJ's reliance on her activities of daily living on the ground that they "do not provide substantial basis for the ALJ's conclusion that she had the residual functional capacity of substantial gainful employment as they were not performed on a sustained basis equivalent to a work week" and objects to his reliance on her ability to get a new place to live as "*prima facie* evidence of 'mental capability.'" (Pl.'s Statement of Errors, ECF No. 16 at PAGEID #1157.) Plaintiff misconstrues the ALJ's statements, however. Instead, the ALJ concluded that Plaintiff's activities of daily living and her ability to obtain a new place to live and get utilities activated reflected "more mental capability than the extremely limited ability [she] attempted to portray at the hearing." (ECF No. 11-2 at PAGEID #92.) But in assessing Plaintiff's credibility and determining her mental RFC, the ALJ did not rely exclusively on her activities of daily living or her ability to obtain a new place to live. Rather, the ALJ also relied upon her treatment records; her response to medication; inconsistencies in her testimony; that her children were removed from her care due to drug use rather than for deficits in her concentration, persistence, or pace; and that she faced situational stressors, such as problems with her daughter, lack of child support payments, and other financial difficulties. (*Id*. at 89-94.) Significantly, the ALJ did find Plaintiff's allegations to be credible to some extent and offered several restrictions

in Plaintiff's mental RFC assessment.

In summary, the undersigned finds that that the ALJ's credibility assessment is supported by substantial evidence. It is therefore **RECOMMENDED** that the Court **OVERRULE** this contention of error and decline to disturb the ALJ's credibility assessment.

**B.      The ALJ's Reliance on the VE's testimony**

Plaintiff next challenges the ALJ's reliance upon the VE's testimony. According to Plaintiff, the ALJ erroneously "fail[ed] to incorporate and account for the VE's response that 'over 90 percent of the employers will tolerate no more than one day's absence per month on a routine basis' and that about '5 percent of the time, or about three minutes an hour is all an employer would tolerate' for a worker to go 'off-task' or on a break." (Pl.'s Statement of Errors, ECF No. 16 at PAGEID #1158 (citing Hearing Transcript, ECF No. 11-2 at PAGEID ##138-39).)

The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do her past relevant work, given her RFC. 20 C.F.R. § 404.1560(b)(2). "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). In formulating the hypothetical, an ALJ is only "required to incorporate those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Here, the ALJ posed a number of hypothetical questions to the VE. Plaintiff correctly points out that in response to one of these hypothetical questions, the VE testified that being off task or absent could be work-preclusive. (*See* Hearing Transcript, ECF No. 11-2 at PAGEID

##138-39.) However, the ALJ's decision makes clear that he did not find these limitations credible and supported by the evidence. Instead, when the ALJ posed a question to the VE reflecting those limitations he found credible and that he consequently incorporated into the RFC determination, the VE testified that a hypothetical individual of Plaintiff's age, education, and vocational profile could perform jobs that exist in significant numbers in the national economy. Accordingly, the VE's testimony serves as substantial evidence in support of the ALJ's conclusion that Plaintiff can perform other work and is therefore not disabled. The undersigned therefore **RECOMMENDS** that the Court **OVERRULE** this contention of error.

## IV. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE